Walrath v. Norton.

GERRET L. WALRATH, appellant, v. HIRAM NORTON, survivor, &c., appellee.

*Appeal from Kendall.*

A general receipt in full of all demands is presumed to be given on an adjustment of all transactions between the parties; but such a receipt is subject to explanation, and may, upon satisfactory proof, be restrained in its operation. It may be shown that the settlement was in fact but a partial one, or though intended to be general, that a particular transaction was not taken into consideration.

THIS suit was originally brought before a justice of the peace of Kendall County, by Norton & Blackstone for the use of John Blackstone against Walrath, and on the trial thereof, the justice rendered a judgment in favor of the defendant for costs. The plaintiffs appealed to the Circuit Court, and the cause was heard before the Hon. Theophilus

L. Dickey at the February special term, 1849, without the intervention of a jury, when a judgment was rendered in favor of the plaintiffs for $59·03, damages.

The evidence in the cause was embodied in a bill of exceptions, and was substantially as follows:

Jacob Metzker, called by the plaintiffs, testified that some time in the spring or summer of 1847, he was in conversation with Walrath, negotiating a settlement of some dispute between them, when Walrath stated that he paid his attorneys out of the store of Norton & Blackstone, and that he, Walrath, had to pay the latter in cash. He could not recollect the precise time of this transaction, but thought it was during the latter part of June, or the first of July.

John M. Crothers, also called by the plaintiffs, testified that some time early in the spring of 1847, Walrath, for Norton & Blackstone, placed in the hands of witness and his partner certain accounts for collection, one of about $300 against the defendant, another of $27·71 against A. R. Dodge, and a third for $31·32 against S. W. Randall ; that Walrath at the time told witness that he supposed he would have to pay the two last mentioned accounts, as he owed them for professional services, and requested witness not to sue them immediately ; that some time afterwards, from one to three months as witness supposes, not recollecting the precise time, Walrath exhibited to witness and his partner a writing from Norton & Blackstone, the same read in evidence on the trial, which was in the words and figures following, to wit :

"Messrs Crothers & Pitzer,
                              Gent'n.
                                        Mr Walrath has paid us eighty dollars on yr acc't.   He also settled his acc't with us for which you gave a receipt to us.
                              Resp'y yours,
10 July 18                         Norton & Blackstone."

He further testified that at the time he and his partner received the accounts mentioned, they receipted for the account of defendant of about $300, those of Dodge and Ran-

dall which were charged to them and not to defendant; that
he had become familiar with the hand-writing of the plaintiffs,
had seen one of them write, and believed that the receipt
hereinafter named and filed in this case, was in the hand-
writing of one of the plaintiffs ; that, to the best of his rec-
ollection, the settlement between Metzker and Walrath did
not take place until after the first of June, as witness was
employed by the year by Metzker as his attorney and the
year terminated on the first of June, and said cases were not
then settled, but were before the August term of the Ken-
dall Circuit Court for that year.

A. R. Dodge, another of plaintiffs' witnesses, testified that
he traded in the store of Norton & Blackstone to the amount
of about $27·71, and that Walrath told him that he was
either selling goods on commission, or as clerk of Norton &
Blackstone ; that witness was, at the same time, doing pro-
fessional business as an attorney for Walrath, and was will-
ing to take the amount of his fees out of the store aforesaid ;
that Walrath said he should charge the same to himself; that
witness did not contract with Norton & Blackstone for said
goods, and that he commenced trading with Walrath at said
store about the first of December, 1846.

S. W. Randall was also called by the plaintiffs and testi-
fied, that in 1846 and 1847 he was attorney for Walrath in
some suits he had with Jacob Metzker; that he received
from Walrath out of the store of Norton & Blackstone
$31·32 towards his account against Walrath, supposing that
the goods belonged to him; that some time in the spring of
1847, Mr. Pitzer, partner of the witness Crothers, called on
witness and stated that he had said account, when witness
told him he supposed the goods belonged to Walrath, but if
Walrath did not pay for them, he supposed he should be
obliged to pay for them ; that he knew when the negotiation
took place between Walrath and Metzker, and thought it was
as early as the first part of June, and was quite confident
that it was before defendant started for New York.

The plaintiffs produced in evidence three certain papers
between Metzker and Walrath, disposing of three suits be-

tween the latter, dated and filed July 26, 1847, and Randall testified that his recollection was very distinct that they were made and filed a considerable time after the negotiation spoken of by Metzker.

The defendant then read in evidence, after proof of its execution, the following receipt:

"Rec'd, Lockport, 10th July, 1847, from G. L. Walrath, two hundred and twenty one $\frac{66}{100}$ dollars in full of all demands to this date."    (Signed,)    Norton & Blackstone."

John W. Chapman, called by defendant, testified that he and defendant started for New York some time in May, 1847, and in his opinion the negotiation spoken of by Metzker took place before they went, but was not consummated until after their return, some time in June.

The foregoing was all the evidence in the case.

*S. W. Randall,* for the appellant, contended that the receipt was conclusive of a final settlement between the parties, and that the judgment of the Circuit Court was not sustained by the evidence.

*E. S. Leland,* for the appellee, to sustain the judgment of the Circuit Court, referred to the case of *Lowry* v. *Orr,* 1 Gilm. 70, and the cases there cited.

Where a cause is submitted to the Court below for trial, without the intervention of a jury, the decision of that Court upon the weight and effect of the evidence, will not be reversed, unless it palpably appear that the character of the testimony was misconceived.    *Harmon* v. *Thornton,* 2 Scam. 351.

The receipt was not intended to be in full.    The evidence tends to show that the accounts against Randall and Dodge were not included in the settlement.

The Opinion of the Court was delivered by

TREAT, C. J.   There can be no doubt that Walrath was originally liable to Norton & Blackstone for the price of the goods sold to Dodge and Randall. The only question is, whether that

liability has been discharged. The receipt was *prima facie* evidence of payment. A general receipt in full of all demands is presumed to be given on an adjustment of all transactions between the parties ; but such a receipt is subject to explanation, and may upon satisfactory proof be restrained in its operation. It may be shown that the settlement was in fact but a partial one, or, though intended to be general, that a particular transaction was not taken into consideration. There are some circumstances in this case which tend strongly to show that the demand in question was not embraced in the settlement. Walrath, instead of debiting himself with the price of the goods on the books, charged them directly to Dodge and Randall. The accounts were drawn off and placed by him in the hands of attorneys for collection, and a receipt taken in the name of Norton & Blackstone. The settlement was made at a distance from the town where these transactions took place, and probably when the parties had nothing but the books and the receipt of the attorneys before them. We think it very probable that, at the time of the settlement, Norton & Blackstone knew nothing of the real circumstances respecting this demand, and therefore it was not taken into consideration by them. At all events, we are not prepared to say that the Circuit Court erred in coming to such a conclusion.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*